# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 08 CR 848 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| JOE HESTER, ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Joe Hester's ("Hester") motion to suppress evidence [135]. For the reasons set forth below, the motion to suppress [135] is respectfully denied.

### I. Background

On July 31, 2007, Judge Adam Bourgeois of the Circuit Court of Cook County Judge issued a search warrant, authorizing the search of both Joe Hester and the third floor west apartment located at 1822 E. 73d St., Chicago, Illinois, and permitting the seizure of "a chrome finish semi-automatic handgun, any ammunition, and any documentation of Proof of Residency which have been used in the commission of, or which constitute evidence of the offense of UUW by felon, 720 ILCS 5/24-1.1(a)." The warrant was issued based on a complaint for search warrant (hereinafter "the affidavit"), signed by Chicago Police Officer Cedric Taylor as the complainant and submitted to Judge Bourgeois on July 31, 2007.

In the affidavit, Taylor stated that he had a conversation with a confidential informant regarding controlled substances sold by a black male known to the CI as "Joe," on the third floor west apartment of 1822 E. 73rd Street, Chicago, Illinois (hereinafter "the apartment"). Taylor stated that he had worked with the CI for the past nine weeks, during which time the CI had supplied Taylor and other officers with information regarding narcotics violations and weapons violations on at least eight occasions. Taylor stated that the previous information provided by

the CI had been both true and accurate regarding the locations of narcotics and weapons recovered. The CI's information had on five occasions resulted in arrests after illegal contraband and weapons were recovered. Seven individuals in total were arrested as a result of the CI's information, and these arrests all resulted in criminal cases pending before the Circuit Court of Cook County at the time that the affidavit was drafted.

The CI told Taylor that a male black known as "Joe" sells heroin from the apartment. On July 30, 2007, the CI went to the apartment to purchase heroin from "Joe." The CI went to the address, walked up to the third floor, and knocked on the apartment door. The CI related that the door was answered by a black male known to the CI as "Joe," who brandished a chrome semiautomatic handgun in his right hand. The CI asked for a dime bag of heroin. "Joe" then took $10.00 from the CI and walked back into the apartment, returning to the front door without the handgun but with a large plastic bag in his right hand, containing approximately 40 smaller bags containing heroin, and handed the CI a small clear plastic bag which contained heroin. The CI then left the apartment. The CI indicated that he knew that the substance was heroin by the color and texture and also by the effect that he experienced after ingesting the heroin. The CI further related that this was the first time he had ever purchased heroin from "Joe," but that he was aware that he could thereafter purchase narcotics from "Joe" at the apartment at any time.

Taylor stated that he surveilled the apartment building on July 31, 2007, and observed a male black fitting the description given by the CI. The individual was consistent with a photo that Taylor had shown to the CI, and the CI had identified the person in the photo as "Joe." Taylor observed "Joe" sitting in a vehicle in front of the apartment building and saw him enter the apartment building, using keys that he had in his possession. Taylor verified the number 1822 on the door of the apartment building. Taylor stated that he went with the CI to 1822 E.

2

77th Street to confirm that this was the building in which the CI had encountered "Joe," observed the handgun, and purchased heroin.

The search warrant was executed on or about August 1, 2007. Inside the apartment, the officers encountered Hester and a female companion. During the search, officers recovered a loaded Smith and Wesson, Model 5903, 9mm pistol, serial number TDH4676; a loaded Gerstenberger and Eberwein, Model M322, .32 caliber revolver, serial number 28299; indicia of residency in the name of Joe Hester bearing the address of 1822 E. 73d St. #3, Chicago, Illinois; approximately 19.4 grams of crack cocaine; approximately 38.3 grams of powder cocaine; a small scale; and plastic bags.

As a result of the search, Hester, a convicted felon, was arrested and charged with violations of 18 U.S.C. §922(g) as well as 21 U.S.C. §841(a)(1). On February 17, 2009, a federal grand jury returned a three-count indictment charging Defendant Joe Hester with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and two counts of possession of narcotics with intent to distribute [24]. On December 9, 2009, a grand jury returned a superseding indictment based on substantially the same charges [89].

**II.     Analysis**

Hester argues that the facts alleged in the search warrant complaint were insufficient to establish probable cause because the affidavit did not include how the CI entered the building; it did not state that the Chicago Police Department had anyone purchase heroin on their behalf; the allegations concerning the CI's heroin purchase were conclusory and were uncorroborated by recordings or by officer eyewitness testimony; the affidavit did not state how the officer knew who the "Joe" referred to in the affidavit was; and the affidavit did not indicate whether the CI received any rewards for his information. Hester also contends that he is not known by the name

"Joe" in the apartment building where he resides. Hester further argues that the CI's motives were questionable. He challenges the existence of the CI referred to in the affidavit and argues that the CI would not withstand examination by a judge. Finally, Hester notes that the arrest affidavit contains details that the search warrant affidavit did not contain. For these reasons, Hester contends that the affidavit in support of the search warrant failed to establish probable cause and that, as a result, the Court must suppress all of the evidence obtained through the execution of the warrant. In turn, the government argues that Judge Bourgeois' probable cause determination was sound because the CI's personal observations concerning "Joe's" activities and his possession of a handgun were sufficiently detailed; Officer Taylor corroborated some of the details provided by the CI; and the interval of time between the informant's buy and Taylor's warrant application was short.

The Fourth Amendment mandates that a warrant describe with particularity "the place to be searched and the persons or things to be seized." Case law has clarified that "[t]he level of specificity must be such * * * that the officers executing the warrant are able to identify the things to be seized with reasonable certainty." *United States v. Sleet,* 54 F.3d 303, 307 n. 1 (7th Cir. 1995) (internal quotation marks omitted). Supporting affidavits may supply the particularity required, as long as those affidavits are incorporated into the warrant. *United States v. Jones,* 54 F.3d 1285, 1290 (7th Cir. 1995). If evidence is obtained in violation of the Fourth Amendment, that evidence may be excluded (see, *e.g., Arizona v. Evans,* 514 U.S. 1, 11 (1995)), but it need not be, especially if evidence is obtained by officers acting in good faith on their belief that the warrant and their execution of it were valid. *United States v. Leon,* 468 U.S. 897, 919-21 (1984).

Before issuing a search warrant, an issuing officer must determine whether probable cause exists for doing so. *United States v. Walker,* 237 F.3d 845, 850 (7th Cir. 2001). "Probable

cause is a common-sense, nontechnical inquiry, and an affidavit submitted in support of a search-warrant application will be sufficient to support a probable-cause finding if, 'based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.'" *U.S. v. Dismuke*, 593 F.3d 582, 586-87 (7th Cir. 2010) (quoting *United States v. Peck,* 317 F.3d 754, 756 (7th Cir. 2003)). Where, as here, the affidavit submitted in support of a search warrant relies on information supplied by an informant, the totality-of-the-circumstances inquiry generally focuses on the informant's reliability, veracity, and basis of knowledge. See *United States v. Olson,* 408 F.3d 366, 370 (7th Cir. 2005). Several factors inform the analysis, including: (1) the degree of police corroboration of the informant's information; (2) the extent to which the information is based on the informant's personal observations; (3) the amount of detail provided by the informant; (4) the interval of time between the events reported by the informant and the warrant application; and (5) whether the informant personally appeared before the warrant-issuing judge to present the affidavit or testimony. *Dismuke*, 593 F.3d at 587; see also *U.S. v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005); *United States v. Koerth,* 312 F.3d 862, 866 (7th Cir. 2002). "[A] deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *United States v. Brack,* 188 F.3d 748, 756 (7th Cir. 1999) (citing *Gates,* 462 U.S. at 233).

### A. Probable Cause Determination

In the affidavit presented to Judge Bourgeois, Taylor relayed the CI's statements that he personally had purchased heroin from "Joe" and had observed a chrome handgun in "Joe's hand when he answered the door. The CI disclosed the address where the purchase took place, the price and type of drug, gave a brief physical description ("black" and "male") of "Joe," and gave

a description of the handgun that he observed in Joe's hand. The CI noted that "Joe" returned to the door with a large plastic bag in his right hand, containing approximately forty smaller bags, and handed the CI a small clear plastic bag which contained heroin. The CI indicated that he had made the purchase from "Joe" on the day before the warrant was sought. The CI admitted that he personally had purchased heroin from "Joe," even though Taylor had not requested such information, and thus the CI made a statement against his own penal interest.

Taylor also corroborated the details provided by the CI, namely, the physical description of the suspect and the place of purchase. He was able to make an identification of "Joe" by showing the CI a photograph of Hester and by his own personal observations of Hester entering and leaving the building in question on July 31, 2007. Hester complains that the search warrant affidavit does not set forth how Taylor determined that the "Joe" described by the CI was in fact Joe Hester, but the complaint affidavit does. Yet how Taylor made this connection is unimportant for the purposes of the search warrant, given that the CI identified a photograph of Hester as "Joe" and Taylor himself identified Hester walking in and out of the building at issue. The photo identification was sufficient for Judge Bourgeois' probable cause determination.

One factor in the analysis, none of which are dispositive, is whether the CI appeared before the issuing judge. See *Taylor,* 471 F.3d at 840. Here, the CI did not appear. However, a CI's "track record of providing useful information to the authorities is strong evidence that the informant is a reliable source of information" (*id.*) and, under the present circumstances, the CI's previous track record and cooperation outweighs the fact that the CI did not testify in person. See *United States v. Pritchard*, 745 F.2d 1112, 1121 (7th Cir. 1984) ("the reliability and credibility of the informants was established for the magistrate because their information was provided on the basis of personal knowledge and because they had previously provided accurate

information to the government"); see also *United States v. Rucker*, 138 F.3d 697, 700 (7th Cir. 1998) (officer able to rely on informant's tip in arresting defendant because informant had been reliable in the past). Taylor stated in the affidavit that his CI had provided accurate information on at least eight prior occasions, resulting in charges against seven individuals.

The present facts are strikingly similar to those of the search warrant upheld by the Seventh Circuit in *United States v. Lake*, 500 F.3d 629, 633 (7th Cir. 2007). In *Lake*, a "concerned citizen," previously unknown to the police, informed a police officer that he knew of an acquaintance who sold "rock," or crack, out of his apartment, and that he had bought crack from the individual the previous evening. The informant specified that the individual took the crack from a particular dresser drawer in his bedroom and that he saw a black pistol inside that drawer. The informant drew a diagram of the individual's apartment and highlighted where the contraband was kept. The officers drove past the apartment to confirm that the exterior matched the informant's description. They subsequently obtained a warrant, and, upon executing the warrant, the officers found drugs and a gun. The Seventh Circuit upheld the finding of probable cause underlying the issuance of the warrant, noting that although the informant was previously unknown to the officer, "given the recency of the purchase, it was reasonable for the police to rely on his statements." *Id.* at 633. The court further reasoned that "the informant's admission that he had purchased crack is a statement against his penal interest and thus a weighty factor in establishing probable cause even if the statements have not been proven reliable." *Id.* Here, as in *Lake*, the recency of the CI's purchase, the detail provided by the CI, and the CI's statement against interest carry considerable weight in the probable cause determination.

Hester points out that the affidavit did not indicate how the CI got into the building. In his motion, Hester has provided the Court with affidavits concerning building access in an effort

7

to establish that the CI could not have gained access to the building and therefore was not truthful. However, the motion and Hester's attached affidavits present inconsistent information concerning access to the building. Hester's motion states, "[T]o gain access you must have a key or be with a person who retains one." Motion at 1-2. His first affidavit notes, "a key is required to open the front door of the building (because it remains locked at all times)." *Id*. at 5. Another affidavit, submitted by Dorlice Johnson, then states that "[t]he only persons having access to the building are the tenants who reside in the building." *Id.* at 6. However, Hester's second affidavit states, "the only manner in which a non-tenant can gain access to the building is if they are electronically buzzed in." *Id.* at 7. Hester's affidavits do not establish that the CI must have lied about his encounter with "Joe" because the CI could not have gotten into the building; rather, Hester's affidavits establish that the CI could have had a key, gone in with a tenant, or been buzzed in. It is not necessary for the affidavit to establish each and every fact necessary to support conviction. Probable cause does not require "evidence needed to convict." *United States v. Roth*, 201 F.3d 888, 893 (7th Cir. 2000). Rather, "'[p]robable cause requires only a probability or a substantial chance of criminal activity, not an actual showing of such activity.'" *Id.* (internal quotations omitted). The information set forth in the search warrant affidavit in this case meets that standard. Thus, for the purpose of finding probable cause, the lack of detail about how the CI entered the building does not undermine the reliability of the search warrant in the totality of the circumstances.

Similarly, Hester contends that he is not known as "Joe" in the apartment building, implying that the CI could not have learned such information from the building's mailboxes or the other tenants and thus must have fabricated this fact. Motion at p. 5-6. However, the search warrant affidavit does not claim that the CI knew "Joe" through his association with the building.

8

Rather, the search warrant does not state how the CI learned the name of "Joe," and therefore the fact that Hester is not known to other tenants as "Joe," and does not show that name on the mailbox, does not contradict the information in affidavit. Although additional information as to how the CI knew of "Joe" would have provided more detail, such detail was not necessary to Judge Bourgeois' probable cause determination.

Hester queries "what caused this heroin drug user to become the moral citizen and turn in a possible supplier of his/her drug habit * * * * what was his /her reward for doing such?" Motion at 2. The Supreme Court noted in *Illinois v. Gates*, 462 U.S. 213, 234-35 (1983), that "even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." See also *United States v. Towns*, 913 F.2d 434, 441 (7th Cir. 1990) (even if an informant's motives are questionable, a strong demonstration of a basis of knowledge may remedy a weak showing of reliability). Given the CI's proven track record and the factual details that he provided, his potential motivation becomes less of a factor under *Gates* and *Towns*.

Hester's motion also points out areas where the affidavit in support of the criminal complaint contains more information than the search warrant affidavit and argues that those additional details undermine Judge Bourgeois' finding of probable cause based on the search warrant affidavit. An examination of the two affidavits reveals that they are not inconsistent, but rather that the complaint affidavit contains more information than the search warrant affidavit. The criminal complaint affidavit is irrelevant to the search warrant affidavit, since it was never presented to Judge Bourgeois and, indeed, did not even exist until more than a year after the search warrant was executed. What matters is whether, based on the totality of the

9

circumstances, the search warrant affidavit sets forth "sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *Dismuke*, 593 F.3d at 587. Judge Bourgeois obviously concluded that it did, and this Court concurs.

Finally, Hester posits that the CI could not have withstood cross examination under oath. But whether the informant personally appeared and testified before the issuing judge, thus allowing the judge to assess his credibility, is a just one factor to consider in evaluating probable cause. "[N]o one factor is dispositive, so a deficiency in some areas can be compensated by a stronger showing in others." *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009). Given the strength of the other factors concerning the information provided by the CI – the CI's track record, the CI's detailed description of his encounter with "Joe," Taylor's corroboration regarding the place and Hester's physical description, and the interval of time between the buy and the warrant application – the fact that the CI did not appear before Judge Bourgeois does not torpedo the evaluation of probable cause in the present case.

### B. Good Faith Exception

Even if the Court determined that the information provided by the CI was insufficient to establish probable cause, the good faith exception to the warrant requirement applies. The rationale for this exception to the warrant requirement is that "[p]olice are not legal experts and are entitled to rely upon a warrant duly issued by a judicial officer on the basis of an affidavit that so far as the police know is accurate and complete, so that the only issue is its legal sufficiency, a matter for the judicial officer to determine." *United States v. Langford*, 314 F.3d 892, 864 (7th Cir. 2002). Because Taylor obtained a search warrant prior to the search of Hester's residence, the search enjoys a presumption of good faith. See *United States v. Woolsey*, 535 F.3d 540, 546 (7th Cir. 2008) ("An officer's decision to obtain a warrant is a *prima facie*

evidence of good faith"). In order to rebut the presumption, a defendant must show "that the judge who issued the warrant abandoned his neutral, detached role and acted as a rubber stamp for the police, or that the affiant intentionally or recklessly misled the judge, or that the supporting affidavit is so lacking in indicia of probable cause that an officer's belief in its existence would have been entirely unreasonable, or that the warrant itself is so facially deficient that the executing officers could not reasonably have believed it to be valid." *Id.*

Hester does not attempt to rebut the presumption of good faith. Although he "does not believe that there is or ever was a CI," beyond that unsupported, conclusory statement, Hester fails to present sufficient evidence to establish that the affiant made a false or reckless statement to the judge either in his own right or in presenting the facts related to him by the CI. Further, the affidavit notes that the CI has proven reliable in the past and Taylor also corroborated the CI's statements concerning the identity of "Joe" and the location of his apartment.

Finally, Hester cannot meet the heavy burden of establishing unreasonable reliance by the officers executing the warrant. A defendant can establish unreasonable reliance only if courts have clearly held that a materially similar affidavit previously failed to establish probable cause, under facts that were indistinguishable from those presented in the case at hand, or the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. *United States v. Woolsey*, 535 F.3d 540, 548 (7th Cir. 2008). Hester has not cited to any case involving a materially similar affidavit and cannot establish that the affidavit is so plainly deficient, particularly where the CI has proven reliable in the past, the CI's encounter with the suspect was close in time to the warrant application, the CI made an admission against the CI's penal interest, Taylor corroborated the CI's description of the location of the transaction, and

Taylor corroborated the CI's identification of "Joe" by his own personal observations and with a photograph. See *Rucker*, 138 F.3d at 700; *Lake*, 500 F.3d at 633. For these reasons, Hester has failed to rebut the presumption of good faith reliance.

**C.** ***Franks* Hearing**

Hester also argues that he is entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). In order to be entitled to a *Franks* hearing, a defendant must make a substantial preliminary showing that (1) a false, misleading or omitted statement was included in the affidavit supporting the warrant, (2) that the affiant made the false statement intentionally or with reckless disregard for the truth, and (3) that the false, misleading or omitted information was necessary for the judicial finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). The Seventh Circuit has observed that "the three elements necessary to entitle a defendant to a *Franks* hearing 'are hard to prove, and thus *Franks* hearings are rarely held.'" *United States v. Maro,* 272F.3d 817, 821 (7th Cir. 2001) (quoting *United States v. Swanson*, 210 F.3d 788, 790 (7th Cir. 2000)). A defendant seeking a *Franks* hearing bears a substantial burden to demonstrate probable falsity. *Franks*, 438 U.S. at 170; *Maro,* 272 F.3d at 821. The defendant must "offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." *McNeese,* 901 F.2d at 594. The presumption of validity of the warrant "cannot be overcome by defendant's self-interested inferences and conclusory statements." *United States v. Souffront*, 338 F.3d 809, 822-23 (7th Cir. 2003).

Hester has failed to meet the considerable burden necessary to warrant a *Franks* hearing. He has failed to show that any false, misleading, or omitted statement was included in the affidavit supporting the warrant, that Taylor made any false statement intentionally or with

reckless disregard for the truth, or that any false, misleading, or omitted information was necessary for Judge Bourgeois' finding of probable cause in this case. Hester's failure to set forth a reason as to why Taylor would intentionally misstate the facts or act in reckless disregard of the truth is fatal to his motion:

> The fact that a third party lied to the affiant, who in turn included the lies in a warrant affidavit, does not constitute a *Franks* violation. A *Franks* violation occurs only if the affiant knew the third party was lying, or if the affiant proceeded in the reckless disregard of the truth. Therefore, allegations that hearsay contained in a warrant application is false, or that an informant whose story was recited by an affiant was lying, are insufficient to require a *Franks* hearing, since the falsity or recklessness alleged is not that of the affiant, but of a third party.

*Pritchard*, 745 F.2d at 1119; see also *Roth,* 201 F.3d at 892 ("the question of whether [the CI] made untrue statements is not relevant unless [defendant] can show that [the officer] included them in the affidavit despite his knowledge that they were false or with reckless disregard for the truth"); *Shell v. United States*, 448 F.3d 951, 958 (7th Cir. 2006) (finding defendant failed to make substantial showing of reckless disregard of truth where merely stated that omission was intentional). Hester has failed to make any showing regarding the affiant's state of mind, let alone a substantial showing. See also *U.S. v. Dismuke*, 593 F.3d 582, 588 (7th Cir. 2010)

## IV. Conclusion

For the reasons stated above, Defendant Hester's motion to suppress [135] is respectfully denied.

Dated: October 25, 2010

Robert M. Dow, Jr.
United States District Judge

13