**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 08 CR 848 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| JOE HESTER, | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Joe Hester has filed two post-trial motions: a Motion for Judgment N.O.V. [230] and a Motion to Dismiss Based on Unconstitutional Title 18 [235]. For the reasons set forth below, the motions [230 and 235] are denied.

**I.     Background**

On October 21, 2008, Hester was arrested on a criminal complaint charging him with a violation of 18 U.S.C. §922(g). On November 20, 2008, the government filed a motion for extension of time [10] in which to return an indictment pursuant to 18 U.S.C. §3161(h)(8)(A).[1] The motion indicated that Hester's attorney did not object to the motion. *Id.* On November 20, 2008, Chief Judge Holderman granted the government's motion for an extension of time [11] to and including December 22, 2008. On December 22, 2008, the government filed a second motion for extension of time [14] in which to return an indictment pursuant to 18 U.S.C. §3161(h)(8)(A). The motion again represented that Hester's attorney did not object to the motion. *Id.* On December 22, 2008, Chief Judge Holderman granted the government's second motion for an extension of time [16] to and including January 22, 2009. Then, on January 22, 2009, the government filed a third motion for extension of time [20] in which to return an indictment pursuant to 18 U.S.C. §3161(h)(8)(A). The motion stated that government counsel

---

[1]     As part of the October 2008 amendment to the Speedy Trial Act, § 3161(h)(8) was moved to § 3161(h)(7).

had not yet heard from Hester's attorney as to whether there was an objection to the motion. *Id.* On January 22, 2009, Chief Judge Holderman granted the government's third motion for an extension of time [21] to and including February 23, 2009. On February 17, 2009, the grand jury returned a three-count indictment charging Hester with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and two counts of possession of narcotics with intent to distribute [24].[2] On December 9, 2009, a grand jury returned a superseding indictment based on substantially the same charges [89].

After a lengthy pre-trial process and substantial motion practice, a jury trial commenced on October 24, 2011. On October 27, 2011, the jury returned a verdict of guilty as to all three counts.

## II. Motion to Dismiss

Defendant Joe Hester moves to dismiss the indictment in this case based on "unconstitutional Title 18." Hester first sets forth a series of "facts" which reiterate claims and contentions that he previously made in his many motions litigating suppression issues as well as in his motions to dismiss this case, all of which have been previously rejected by this Court and need not be revisited. Hester then contends that "18 U.S.C. 3231 is not based on a constitutionally passed bill, namely the lack of Quorum during the 1947 and 1948 Congress." Motion at 3. Hester claims that "No One and No Court has addressed the simple argument of this petition, namely no Quorum existed during the presentation of the bill 3190, not be amended;" Hester is mistaken. To the contrary, many litigants and courts have addressed this issue.

---

[2] On March 25, 2009, Hester's attorney moved to withdraw [41], which the Court granted on March 26, 2009. A federal defender panel attorney was appointed as standby counsel on April 8, 2009. On May 15, 2009, Judge Manning, to whom this case previously was assigned, granted Hester's request to proceed *pro se.*

2

Most recently, n *United States v. Levy,* --- F. Supp. 2d ----, 2012 WL 1032484 (S.D. Fla. Mar. 13, 2012), a district court recently considered and rejected what appears to be an identical challenge to the constitutionality of Title 18. In *Levy,* the defendant argued that Public Law 80–772, which became Title 18 of the United States Code (including § 3231), was enacted in violation of the Constitution because the Quorum Clause of the Constitution was violated when the House of Representatives voted on May 12, 1947, to pass H.R. 3190, which later became Public Law 80–772, and the Quorum Clause was violated a second time when the Speaker of the House and the President pro tempore of the Senate signed Public Law 80–772 on June 23, 1948, four days after Congress adjourned. *Id.* at *1. The *Levy* court rejected the argument, finding that the challenge was prohibited by the "enrolled bill rule" as argued in *Marshall Field & Co. v. Clark*, 143 U.S. 649 (1892) (if the Speaker of the House and the President pro tempore of the Senate attest that a bill has been duly passed, the enrolled-bill rule prevents going behind the bill to evaluate whether the bill satisfied the constitutional requirement that it pass both houses of Congress.).

The *Levy* court also examined the legislative record for the bills at issue and determined that they were in fact properly passed:

> * * * contrary to any contention that Public Law 80–772 was signed without the proper authority of Congress, the House Journal indicates that the Speaker of the House and the President pro tempore of the Senate were pursuant to House Concurrent Resolution 219. See H. JOURNAL, 80th Cong., 2d Sess. 771 (1948) (" Resolved, That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled."). See also S. JOURNAL, 80th Cong., 2d Sess. 578–79 (1948) (stating that the President pro tempore of the Senate, pursuant to the authority of House Concurrent Resolution 219, signed H.R. 3190 after the adjournment of the Senate on June 20, 1948). In sum, § 3231 is valid. See *Wolford v. United States*, 362 Fed. Appx. 231, 232 (3d Cir.2010) ("Section 3231 was properly enacted and is

binding. The 1948 amendment to that statute, Public Law 80–772, passed both houses of Congress and was signed into law by President Truman[.]").

*Id.* at *2-3. Finally, the Levy court observed that "arguments identical or similar to those made by Mr. Levy have been squarely rejected by all the federal courts to have considered them." *Id.* (collecting cases).

The logic of *Levy* is persuasive and does in fact appear to be in line with every federal court that has considered this sort of claim. See *Cardenas-Celestino v. United States*, 552 F. Supp. 2d 962, 966-67 (W.D. Mo. 2008) (list of decisions rejecting jurisdictional challenge to 18 U.S.C. § 3231). For example, in *Cardenas-Celestino*, the petitioner argued that Public Law 80-772, under which 18 U.S.C. § 3231 had been ratified, had not been properly passed because a different bill was passed by the Senate than that passed by the House of Representatives, the bill signed into law was never ratified, and Congress was adjourned when the bill was purportedly passed. The petitioner argued that because Title 18 of the United States Code was void *ab initio*, his conviction also was void. *Id.* The district court for the Western District of Missouri was not persuaded:

> "This claim is part of a new rash of frivolous claims raised by prisoners across the country, many of whom have copied the arguments directly from Internet Websites which propound the argument developed by a Texas firm, International Legal Services. All of these allegations concerning the supposed irregular adoption of Public Law 80-772 have been firmly denied by every court to address them. The Supreme Court denied all the petitions presented by International Legal Services and those associated with them. *See In re Von Kahl*, --- U.S. ----, 128 S. Ct. 520, 169 L. Ed. 2d 369 (2007) (denying writ of habeas corpus raising these same arguments); *In re Miles*, --- U.S. ----, 128 S. Ct. 689, 169 L. Ed. 2d 540 (2007) (same).

*Id.*

The *Cardenas-Celestino* court further explained that the Third and Seventh Circuit Courts of Appeals have rejected similar arguments concerning the constitutionality of the manner

4

in which Public Law 80-772 had been enacted. *Id.*[3] In *United States v. Collins*, 510 F.3d 697, 698 (7th Cir. 2007), the Seventh Circuit discussed the frivolous nature of the lawsuits:

> Concerning Collins's appeal, we can be brief. Apart from a perfunctory and indeed frivolous attack on the sufficiency of the evidence, Collins's lawyer, M. Engin Derkunt of the Texas Bar, devotes his entire brief to arguing that Title 18 [of] the federal criminal code [] is unconstitutional because of supposed irregularities in its enactment. We recently described an appeal in which Derkunt made the same argument on behalf of another client as "unbelievably frivolous." *United States v. States*, 242 Fed. Appx. 362, 2007 WL 2768906 (7th Cir. 2007) (per curiam). We affirm the judgment against his current client, without prejudice to the client's seeking post-conviction relief on the ground of ineffective assistance of counsel, and we order Derkunt to show cause why he should not be sanctioned for professional misconduct in this court. We are also sending a copy of this opinion to the Texas bar disciplinary authorities. His quixotic crusade— "Title 18: The U.S. Criminal Code-Void ab initio," www.nocriminalcode.us (visited Nov. 7, 2007)—is a profound disservice to his clients.

*Id.*

In *United States v. Campbell*, 221 Fed. Appx. 459, 461 (7th Cir. 2007), the Seventh Circuit explained that the claim that Title 18 had not been properly enacted was factually incorrect:

> Campbell proposes to argue that 18 U.S.C. § 3231, which gives district judges jurisdiction to hear criminal prosecutions, has no legal effect because the House and Senate did not vote on it in the same session of Congress. This belief is factually incorrect—the House passed a version of this legislation in the First Session of the 80th Congress, after which the Senate passed an amended version n the Second Session, and the House then voted to pass the bill as amended in the Senate—and legally irrelevant for at least two reasons: (i) The enrolled bill rule prevents looking behind laws in the way that Campbell proposes. See *Marshall Field & Co. v. Clark*, 143 U.S. 649, 12 S. CT. 495, 36 L. Ed. 294 (1892). (ii) A Session of Congress is not an independent legislative unit. The two chambers need not adopt legislative language in the same Session, nor need they use the same bill numbers. It is enough that the two chambers approve the same language in the same Congress.

---

[3] The Third Circuit cases include: *United States v. Potts*, 251 Fed. Appx. 109, 111 (3d Cir. 2007) (holding that 18 U.S.C. § 3231 was properly enacted and is binding and arguments to the contrary are frivolous); *Benjamin v. Miner*, 256 Fed. Appx. 554, 555 (3d Cir. 2007) (holding there is no merit to the assertion that both houses of Congress did not properly enact 18 U.S.C. § 3231); *United States v. Johnson*, 2008 WL 761109 (3d Cir. 2008) (holding that § 3231, the statute relied upon for district court jurisdiction over criminal offenses was properly enacted and is binding).

*Id.*

The district court in *United States v. Felipe*, 2007 WL 2207804, at *2 (E.D. Pa. July 30, 2007), also discussed the factual errors in a jurisdictional attack similar to Hester's argument in the instant case:

> There was no sine die recess between the votes of the House and Senate; rather, there was an inter-session adjournment between these events. See *United States v. Martinez*, CR. No. C-04-157, C.A. No. C-05-423, 2006 WL 1293261, at *5 (S. D. Tex. May 6, 2006). The House of Representatives passed Public Law 80-772 in the first session of the 80th Congress, while the Senate passed Public Law 80-772 during the second session of that Congress. *Id.* This recess, however, was an intersession, not a sine die, recess. *Id.* Bills passed by one house before an intersession recess and by the other house after the recess are properly passed by Congress * * * * Thus, Public Law 80-772 was passed by both houses before a sine die recess was called and, therefore, was properly enacted (citations omitted). See also *Jerdine v. United States*, 296 Fed.Appx. 832 (11th Cir. 2008).

*Id.*

Hester cites to a number of cases unsuccessfully raising Quorum Clause and other jurisdictional challenges to 18 U.S.C. § 3231, contending that though the arguments raised in those cases were frivolous, his argument is somehow different and meritorious. The Court perceives no discernable difference between the main thrust of Hester's current argument, the argument raised in *Levy* and the other cases cited above, and the arguments raised in the cases cited in Hester's motion that he admits were frivolous. Hester's motion to dismiss based on the jurisdictional challenge is denied.

Hester intersperses a number of other arguments into his jurisdictional challenge, none of which affect the result in this case. He contends that the government failed to prove that the guns at issue in the indictment "violated Interstate Commerce as well as if the defendant was in violation of being a Felon in Possession of a Weapon * * * [and] never proved that the defendant was 'ever' in possession (or had knowledge of) when no alleged CI was produced to corroborate

6

the allegations." Motion at 5.  Pursuant to 18 U.S.C. § 922(g), the government was required to prove that the two guns at issue in the indictment traveled in interstate commerce prior to their recovery in Chicago, Illinois, and it did so through the testimony of Special Agent Kevin Biesty. R.226 at 358-360 (Smith and Wesson firearm was manufactured in Massachusetts); 361-362 (Gerstenberger and Eberwein firearm was manufactured in Germany).  The government also proved that the defendant was a felon as of the date that the firearms were recovered.  Special Agent Bray introduced a certified copy of conviction reflecting that Charles Willie Young was convicted of a felony offense on 3, 1979.  R. 225 at 297-299.  Hester stipulated that he was Charles Willie Young.  R. 225 at 288.

Furthermore, contrary to Hester's arguments, the government presented sufficient evidence that Hester possessed the firearms at issue.  Officer Meseck testified that Hester admitted that the firearms belonged to him.  R. 225 at 159-160 (Officer Meseck recounting Hester's statement that he "had two guns in his bedroom" and directing the officers towards the room); R. 225 at 125-26 (Officer Taylor recounting Hester's statement "everything that's illegal in this apartment, including the cocaine, is mine"); see also *United States v. Harris*, 587 F.3d 861, 867 (7th Cir. 2009) (Harris personally directed the officers to the storage container in Andrews's bedroom where the two guns were found).  The government also presented evidence that the guns were found in a room containing Hester's passport and a variety of correspondence addressed to him.  R. 225 at 225-31; see also *United States v. Alanis,* 265 F.3d 576, 592 (7th. Cir. 2001) (possession of gun found in a nightstand next to his bed, with his eyeglasses, clothing, and wallet nearby).  When Hester, who was wearing a bath towel at the time of the search, asked to dress, he put on clothes from the same room where a quantity of mens' clothing as well as the

guns and identification documents were found. R. 225 at 165-66; 225-31. This evidence was sufficient to demonstrate that Hester "possessed" the firearms at issue.

Hester also argues that no CI was produced to corroborate the allegations. He appears to be referring to the facts underlying the issuance of the search warrant, which was not at issue at trial but rather was addressed exhaustively by the Court prior to trial. The CI's testimony was not relevant to any trial issue, and the government's proof at trial of the charged offenses was not deficient as a result.

### III.    Motion for Judgment N.O.V.

#### A.    Standard

Under Federal Rule of Criminal Procedure 29, "[t]he Court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." A Rule 29 motion should be granted only when "after viewing the evidence in the light most favorable to the United States, the trial court finds that no rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); see also *United States v. Hagan,* 913 F.2d 1278, 1281 (7th Cir. 1990). The Seventh Circuit has stressed that a defendant seeking a judgment of acquittal on sufficiency of the evidence grounds "bears a heavy burden and faces a nearly insurmountable hurdle." *United States v. Seawood,* 172 F.3d 986, 988 (7th Cir. 1999).

To the extent that Hester intends to bring a companion motion for new trial (it is not clear from his motion), the standard is as follows: "Under Rule 33 of the Federal Rules of Criminal Procedure, a district court 'may vacate any judgment and grant a new trial if the interest of justice so requires.'" *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005); see also *United States v. Christ*, 513 F.3d 762, 775 (7th Cir. 2008). "'[C]ourts have interpreted [Rule 33] to

require a new trial in the interests of justice in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial.'" *United States v. Eberhart*, 388 F.3d 1043, 1048 (7th Cir. 2004), *overruled on other grounds*, 546 U.S. 12 (2005) (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). "'A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly.'" *Eberhart*, 388 F.3d at 1048 (quoting *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994)). Accordingly, a court may grant a new trial if the jury's verdict is "so contrary to the weight of the evidence that a new trial is required in the interest of justice." *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999) ("The focus in a motion for a new trial is not on whether the testimony is so incredible that it should have been excluded. Rather, the court considers whether the verdict is against the manifest weight of the evidence, taking into account the credibility of the witnesses."). "The court should grant a motion for a new trial only if the evidence 'preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007) (quoting *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989)).

**B.     Analysis**

Hester contends that errors occurred at trial regarding (i) the government's decision not to call a confidential informant (CI) and (ii) the proof at trial that he possessed the firearms at issue in the superseding indictment. The Court examines each argument in turn.

   *1.     The confidential informant*

Hester argues that he was prejudiced by the government's failure to call the CI, on whose information the Chicago police relied in part in obtaining the search warrant that was executed on August 1, 2007, when the narcotics and firearms at issue in Counts One and Two of the

indictment were recovered. He contends that he intended the testimony of the CI to be his "case in chief," that the government was required to preserve evidence that might play a role in his defense, that he had a right to cross examine the CI pursuant to the ruling in *Crawford v. Washington*, 541 U.S. 36 (2004), that the government was required to identify the CI, and that the government violated Federal Rule of Evidence 615 in failing to do so.

The events at issue in the superseding indictment in this case, and at issue during the trial in this case, took place on August 1, 2007 and October 21, 2008. R. 89. There is no evidence that the CI at issue in the search warrant process had any relevant, admissible evidence concerning the events of August 1, 2007 and October 21, 2008, as alleged in the superseding indictment. Therefore, the CI was not a witness at trial. Although Hester informed the Court that he intended to call the CI as a trial witness, he was unable to articulate why the CI's testimony would be relevant and the Court made it clear that if the CI were called to testify about the search warrant, the testimony would be irrelevant. When Hester indicated that he wanted the CI subpoenaed, the Court stated, "I can't imagine that being proper, but you can tell me why * * * he has got no relevant evidence * * * I have yet to hear any basis for the CI to be relevant at this trial * * * you're not being charged for a drug crime that the confidential information contends took place before the police came to execute the warrant * * * Now, what you're going to say is 'They never should have got in my house in the first place because the warrant process was unlawful.' I understand that * * * [but] it is not a jury issue so it would never have relevance in this case." R. 228 at 21-22, 25-26.

Under these circumstances, the government committed no error in deciding not call the CI. Similarly, the Court did not err in finding that any CI testimony elicited by Hester himself regarding the events underlying the search warrant would have been irrelevant and inadmissible

at trial. The CI had no relevant, admissible evidence and could not have been called as a witness at trial by either party. The CI was relevant to legal issues decided prior to trial, but, as explained exhaustively by the Court during the final pre-trial conferences and during the trial (outside the presence of the jury), the CI was irrelevant to the matters to be decided by the jury. Hester's repeated emphasis on this issue is based on a fundamental misunderstanding of what issues are presented to a jury versus the legal issues that are decided by a judge prior to trial. The issues related to the CI (such as whether the search warrant was proper and whether a *Franks* hearing was warranted) were legal issues decided by the Court prior to trial. Those issues were not relevant at trial.

Hester's *Crawford* argument also fails. The Supreme Court held in *Crawford v. Washington*, 541 U.S. 36 (2004), that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *United States v. Burgos,* 539 F.3d 641, 643 (7th Cir. 2008). Since the CI could not and did not testify, and no reference at trial was made to the CI or to any statements the CI may have made to the officers, *Crawford* was not implicated.

### 2. *Constructive possession issue*

Hester contends that the government failed to meet its burden of proof regarding possession of the firearms at issue in the superseding indictment, arguing that he was found guilty solely because he was a resident of the apartment, but that knowledge and possession were never proved. Contrary to Hester's arguments, there was ample evidence at trial to show that he knew the firearms were in the apartment and that he possessed them.

Under Seventh Circuit case law, constructive possession satisfies the possession element of § 922(g)(1). *United States v. Harris*, 587 F.3d 861, 866 (7th Cir. 2009); *United States v. Morris*, 576 F.3d 661, 666 (7th Cir. 2009), cert denied 130 S. Ct. 1313 (2010). The defendant need not have actual possession of the weapon; constructive possession is sufficient. *United States v. Are*, 590 F.3d 499, 526 (7th Cir. 2009). A defendant constructively possesses an item if he has the power and the intent to exercise dominion or control over the object, either directly or through others. *United States v. Hampton*, 585 F.3d 1033, 1040 41 (7th Cir. 2009). "Constructive possession is a legal fiction whereby an individual is deemed to 'possess' contraband items even when he does not *actually* have immediate, physical control of the objects, i.e., the individual 'does not possess them in a literal sense." *United States v. Morris*, 576 F.3d 661, 666 (7th Cir. 2009) (quoting *United States v. Windom*, 19 F.3d 1190, 1200 (7th Cir. 1994)). In order to distinguish true possessors from mere bystanders, the government must establish a nexus between a defendant and the relevant item. *Morris*, 576 F.3d at 666.

Testimony was presented at trial that Hester admitted that the firearms belonged to him. Officer Meseck testified that when he asked Hester about firearms immediately upon the entry of the officers into Hester's apartment, Hester stated that he "had two guns in his bedroom" and directed the officers towards a bedroom. R. 225 at 159-160; see *United States v. Harris*, 587 F.3d 861, 867 (7th Cir. 2009) (Harris personally directed the officers to the storage container in Andrews's bedroom where the two guns were found). Officer Taylor recounted that Hester admitted to possessing all the contraband in the apartment: he recalled that Hester stated "everything that's illegal in this apartment, including the cocaine, is mine." R. 225 at 125-26. Furthermore, the guns were found in a bedroom that contained Hester's passport and a variety of correspondence addressed to him. R. 225 at 225-31; see *United States v. Alanis*, 265 F.3d 576,

592 (7th. Cir. 2001) (possession of gun found in a nightstand next to his bed, with his eyeglasses, clothing, and wallet nearby). When Hester, who was wearing a bath towel at the time of the search, asked to dress, he walked to and put on clothes in the same room where a quantity of mens' clothing as well as the guns and identification documents were found. R. 225 at 165-66; 225-31. Although Hester was not in his bedroom actually touching the firearms found under his mattress, the evidenced presented at trial was sufficient for the jury to find that he possessed them. He referred to the room as "his" room, and it contained his clothes, correspondence, and passport.

Additionally, a nexus between a defendant and a firearm for purposes of constructive possession can be established by showing that the firearm was seized from the defendant's residence. *United States v. Villasenor*, 664 F.3d 673, 680-81 (7th Cir. 2011) ("The facts in the record were sufficient for the jury to infer that Magin resided in the Chicago apartment. The evidence establishing his residence included pay stubs, tax documents, and a checking account book, all bearing his name, found in the apartment."). That Hester shared the apartment with a female resident does not defeat possession. Constructive possession may be sole or joint: the fact that a third party may have had access to the apartment, and therefore the firearm, does not negate the inference that the defendant had access to the firearm as well. *Id.*

### 3. *Suppression motions*

Hester also argues that the court erred in denying his suppression motions. Hester already litigated and lost this issue on a number of occasions. He first filed a suppression motion on August 12, 2010, and the Court denied it on October 25, 2010. R. 135, 136. Hester filed an additional pleading regarding the suppression motion on November 22, 2010, which the Court considered before again denying the suppression motion on January 14, 2011. R.150, 156. The

Court reconsidered Hester's arguments shortly thereafter and again denied the motion on January 31, 2011. R.161. Five days later, Hester filed a "petition for prosecutorial misconduct" in which he raised many of the same arguments in his previous filings regarding his motion to suppress. R. 162. The Court denied the motion on May 6, 2011. R. 179. Hester raised the issue of suppression again in court on October 11, 2011, and the Court agreed to reexamine the issue. R. 224 at 21-25. On October 18, 2011, Hester raised the issue of suppression again, and the court refused to disturb its prior ruling on the suppression motion. R. 227 at 6-17, 19-20, 47-49, 57-60. On October 24, 2011, Hester again raised the issue of suppression and the Court again refused to disturb its prior ruling on the suppression motion. R. 225 at 79-92. As this timeline demonstrates, the Court has given Hester's suppression issues extensive and repeated consideration and declines to revisit those rulings again—the record clearly reflects the Court's prior, repeated holdings. Furthermore, to the extent that he raises new arguments for the first time in his post-trial submission, these arguments are forfeited by his failure to bring them in a timely fashion before trial. See *United States v. Kirkland*, 567 F.3d 316, 320 (7th Cir. 2009); see also *United States v. Moody*, 664 F.3d 164, 167-77 (7th Cir. 2011).

      4.    *Speedy Trial Act*

Hester also attempts to revisit his January 12, 2009 motion to dismiss on Speedy Trial Act grounds. Notwithstanding the fact that such a claim is not appropriately brought as an aspect of a motion for a new trial, the speedy trial motion that Hester refers to was considered and denied by Judge Manning on August 27, 2009, after extensive briefing and an in-court hearing. See R. 73 at 2-4 ("the extensions of time were not an abuse of discretion * * * Hester's motion based upon a violation of the Speedy Trial Act [is] denied "). Hester subsequently raised the same arguments by re-filing the motion before this Court on May 7, 2010, which the Court

denied on June 29, 2010. See R. 133 at 10 ("Hester has failed to state any reason to disturb Judge Manning's August 27, 2009 decision to deny the Speedy Trial and due process motions.").

In addition to having considered and disposed of Hester's Speedy Trial Act arguments prior to trial, Hester's current motion—which sets forth some cursory and undeveloped arguments on the issue of the Speedy Trial Act—fails to specify a time period at issue. It is unclear whether he is referring to the period of time at issue in his January 12, 2009 motion or some later period of time. He states that three witnesses have died during the period in which he has been detained, but does not indicate who these witnesses were or what he expected their testimony to have been. From this record, it is impossible to conclude that Hester has suffered any prejudice as a result of any alleged violation of his speedy trial rights.

Moreover, the vast majority of any delay in bringing Hester to trial was occasioned by his own conduct. The docket sheet reflects that Hester filed approximately 50 pleadings prior to the start of the trial in this case on October 24, 2011, necessitating briefing schedules and periods during which the motions were taken under advisement by the Court. As discussed above, he frequently re-filed and/or attempted to re-litigate issues that the Court had previously ruled on. Additionally, when Judge Manning initially set a trial date of January 19, 2010, Hester moved for a continuance of that date, stating that he needed "much more time" to prepare for trial. R. 93, 96. Hester then asked for additional time to address motions on February 9, 2010 and April 29, 2010. R. 117, 124. During proceedings a week before trial, Hester claimed that he was being rushed to trial. R. 227 at 11 ("everybody is in such a rush to rush Joe Hester off to the penitentiary"). Even on the morning of trial, Hester also expressed that he was not ready to proceed to trial, despite the ample additional time he was given, as a *pro se* litigant, to prepare

his defense. R. 227 at 7 ("we really can't go to trial"). In sum, Defendant Hester has not identified a meritorious Speedy Trial Act claim.

Considering the evidence in the light most favorable to the prosecution, making all reasonable inferences in its favor, it is clear that Hester has not met his burden of showing that the record fails to contain evidence from which the jury could have found guilt beyond a reasonable doubt. Moreover, Hester's efforts to relitigate his previously unsuccessful motions to suppress and to dismiss based on Speedy Trial grounds are inappropriately included in his current motion and lacking in merit as well.

## IV. Conclusion

For these reasons, the Court denies Defendant Hester's Motion for Judgment N.O.V. [230] and Motion to Dismiss Based on Unconstitutional Title 18 [235].

Dated: May 10, 2012

_____
Robert M. Dow, Jr.
United States District Judge